SUE FAHAMI
United States Attorney
Nevada Bar No. 5634
SKYLER PEARSON
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
skyler.pearson@usdoj.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CRIMINAL COMPLAINT** |
| Plaintiff, | Case No. 2:25-mj-00237-NJK |
| v. | VIOLATIONS: |
| ADAM SCOTT ARFIN, | 18 U.S.C. § 113(a)(5) – Simple Assault |
| Defendant. | 36 C.F.R. §2.34(a)(1) – Disorderly Conduct |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being first duly sworn, states that:

**COUNT ONE**
Simple Assault
(18 U.S.C. § 113(a)(5))

On or about March 18, 2025, in the State and Federal District of Nevada, within the special maritime and territorial jurisdiction of the United States, specifically, within the boundaries of the Lake Mead National Recreation Area,

**ADAM SCOTT ARFIN,**

defendant herein, assaulted a victim in violation of 18 U.S.C. § 113(a)(5).

**COUNT TWO**
Disorderly Conduct
(36 C.F.R. § 2.34(a)(1))

On or about March 18, 2025, in the State and Federal District of Nevada, within the boundaries of the Lake Mead National Recreation Area,

**ADAM SCOTT ARFIN,**

defendant herein, did commit disorderly conduct with the intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly created a risk thereof by engaging in fighting or threatening, or in violent behavior in violation of 36 C.F.R 2.34(a)(1).

**PROBABLE CAUSE AFFIDAVIT**

Your Complainant, Christopher J. Raynolds, as a Park Ranger with the National Park Services, states the following as and for probable cause:

1. I have been employed as a law enforcement officer with the National Park Service in the Lake Mead National Recreation Area, Clark County, Nevada, for over 20 years.

2. As part of my duties, I investigate criminal violations of law on federal land. Through my employment as a Ranger with the National Park Service, I have received specialized training in the enforcement of federal laws. My training and experience have involved, among other things, dealing with disorderly, assaultive and emotionally disturbed individuals.

3. The following information used to support this Complaint was derived from reports of information obtained from investigations conducted by law enforcement related to the incident or my own personal investigation.

4. This Complaint contains information necessary to support probable cause to believe that the criminal offenses described herein were committed by the defendant, **ADAM SCOTT ARFIN**, and is not intended to include each and every fact and matter observed or known by me. Moreover, to the extent that this Complaint contains statements by witnesses, those statements are set forth only in part and in substance and are intended to accurately convey the information, but not to be verbatim recitations.

## FACTS ESTABLISHING PROBABLE CAUSE

5. On March 18, 2025, National Park Service Rangers Zachary Stuenkel and George Brecht were on routine patrol within the special maritime and territorial jurisdiction of the United States, specifically, within the boundaries of the Lake Mead National Recreation Area, Clark County, Nevada.

6. At approximately 10:50 AM, the Lake Mead Interagency Communication Center advised of an altercation between a white male adult and a black female adult wearing a black sweatshirt at site 38 in the Las Vegas Bay Campground. The reporting party identified as B.B. stated that she was afraid and was hiding in her vehicle. B.B. stated that the couple were fighting, and she had observed the male individual push the female individual twice.

7. Rangers Stuenkel and Brecht arrived at the scene and contacted a couple matching the description of the individuals involved in the altercation. The male individual was identified as **ARFIN**, and the female individual was identified as A.D. The couple was separated, and it was confirmed that the two were from Missouri, were in a relationship as dating partners, and were traveling together.

8. Ranger Brecht spoke with A.D. who stated that she and **ARFIN** had been in an argument. She initially stated that it was not physical. However, during further

3

conversation, she admitted that **ARFIN** had pushed her down twice and had placed his hands on her neck. A.D. stated that she just did not want **ARFIN** to go to jail.

9. Ranger Brecht spoke with the reporting party, B.B. who stated that she had been camping with **ARFIN** and A.D. B.B. stated that she witnessed **ARFIN** and A.D. arguing and that **ARFIN** had twice pushed A.D. down onto a bed inside the tent. B.B. stated that at one point she could hear A.D. shouting "somebody help me" after being pushed down inside the tent. B.B. had recorded a portion of the altercation as a video on her cell phone and showed it to Ranger Brecht. Ranger Brecht could not see either **ARFIN** or A.D. on the video, but he could hear a female calling for help. B.B. also stated that she had observed A.D. with a black eye on two occasions over the past couple weeks.

10. Ranger Brecht met with K.K who was staying in campsite 39. K.K. stated that A.D. had ran to her campsite and told her that she needed help. A.D. asked for a ride away from the campground and made a reference to her neck being hurt.

11. **ARFIN** was taken into custody at the scene. Ranger Stuenkel read him Miranda warnings and **ARFIN** agreed to speak with law enforcement officers. **ARFIN** admitted that he had been in an argument with A.D. but denied ever pushing her or putting his hands on her neck.

12. A further interview with A.D. was completed by National Park Service Special Agent Mike Hastings. During this interview A.D. stated, "he knocked me on the bed and put his hands on my neck, then let me go." At one point she further stated that **ARFIN** used two hands when pushing her onto the bed and that she landed on her back. **AFRIN** got on top of her, placed his hands on her neck and stated, "they were going to do things his way today." When asked to demonstrate how **ARFIN** grabbed her neck, she

4

1  demonstrated with two hands wrapped around both sides of her neck and stated she felt
2  tightness however her breathing was not affected, and she did not lose consciousness. A.D.
3  stated that she did not need any medical attention and did not want to go to the hospital.
4  Contact information was provided to A.D. for a National Park Service Victim Advocate.
5  S.A. Hastings and Ranger Brecht transported A.D. to the SafeNest domestic abuse shelter in
6  Las Vegas.

7      13.    **ARFIN** was transported to the Henderson Detention Center by Ranger
8  Stuenkel.

9      14.    A standard computer records check found that **ARFIN** had been arrested on
10 December 29, 2024, by the Las Vegas Metropolitan Police Department for Domestic
11 Battery and the victim in that matter was A.D. The Las Vegas Justice Court records under
12 case 24-CR-109648 showed that the adjudication had been deferred with a 180-day
13 suspended jail sentence and the court placed several conditions on **ARFIN** as of January 2,
14 2025, to include no contact with the victim A.D., and to stay out of trouble. It appears that
15 these conditions are still in place with a status check to take place on March 27, 2025.
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //

## CONCLUSION

15. Based upon the information set forth in this application, I respectfully submit that there is probable cause to believe that **ARFIN** violated 18 U.S.C. § 113(a)(5) and 36 C.F.R § 2.34 (a)(1) as described above.

_____
CHRIS RAYNOLDS, Park Ranger
National Park Service

SUBSCRIBED and SWORN to before me this ____19th____ day of March 2025.

_____
HONORABLE NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE